USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/2/2026

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| PEREZ QUINTERO, MIGDALIA JOSEFINA,<br><br>         Petitioner,<br><br>-against-<br><br>LaDeon FRANCIS, Field Office Director of Enforcement and Removal Operations, New York Field Office, Immigration and Customs Enforcement; Todd LYONS, Acting Director, Immigration and Customs Enforcement; Kristi NOEM, Secretary, U.S. DEPARTMENT OF HOMELAND SECURITY; Pamela BONDI, U.S. Attorney General; EXECUTIVE OFFICE FOR IMMIGRATION REVIEW,<br><br>         Respondents. | 25-CV-10107 (MKV)<br><br>ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS |

MARY KAY VYSKOCIL, United States District Judge:

  This case concerns the detention of Petitioner Migdalia Josefina Perez Quintero, a Venezuelan national. Petitioner unlawfully entered the United States in September 2022 and soon thereafter was apprehended near the border in Texas. She was subsequently released on humanitarian parole under 8 U.S.C. § 1182(d)(5)(A). Once in the United States, Petitioner applied for and received Temporary Protected Status ("TPS") pursuant to the re-designation by the Department of Homeland Security ("DHS") of Venezuela for TPS in 2023 ("2023 TPS Designation"). However, Petitioner's TPS was subsequently terminated on November 21, 2025. On December 4, 2025, Petitioner was detained and served with a Notice to Appear ("NTA"), charging her as inadmissible under the Immigration and Nationality Act ("INA") for being present

in the United States without admission or parole. She is currently being detained at the Richwood Correctional Center in Richwood, Louisiana, pursuant to 8 U.S.C. § 1225(b)(2)(A).

Petitioner, through next of friend, filed a Petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241, challenging the lawfulness of her detention and seeking release from custody, or in the alternative, a ruling that she is entitled to a bond hearing. [ECF No. 1 (the "Petition" or "Pet.")]. Respondents (the "Government") filed a response, including a "Return" with accompanying exhibits [ECF No. 6], a letter brief in opposition [ECF No. 7], and the Declaration of Assistant Field Office Director Matthew Reaves ("Reaves Decl.") [ECF No. 8].

After receiving an extension to file her reply, [ECF Nos. 9, 10], Petitioner, on December 19, 2025, filed an Amended Petition, through counsel, again challenging the lawfulness of her detention and asserting additional claims for relief. [ECF No. 14 (the "Amended Petition" or "Am. Pet.")]. In opposition, the Government filed a second return ("Second Return") with accompanying exhibits [ECF No. 15], the Declaration of Supervisory Detention and Deportation Officer Derrick D. McClung ("McClung Decl.") [ECF No. 15], and a letter brief in opposition ("Opposition" or "Opp.") [ECF No. 17]. After twice granting the parties' requests on consent for an extension to file Petitioner's Reply, the second of which hinged on permitting the Government to file a Sur-Reply by January 19, 2026 [ECF Nos. 19, 21], Petitioner filed a Reply ("Reply") [ECF No 22], and the Government filed a Sur-Reply ("Sur-Reply") [ECF No. 23]. The Court is also in receipt of Petitioner's notice of supplemental authority in support of her Petition ("Supp. Auth.") which she submitted on January 29, 2026. [ECF No. 24].

A primary issue before the Court involves a statutory interpretation question with which the Court is familiar: whether Petitioner is subject to mandatory detention pursuant to 8 U.S.C. §

2

1225(b)(2)(A) and the attendant due process concerns stemming from that detention, or is entitled to a bond hearing under 8 U.S.C. § 1226(a). Petitioner also claims, among other arguments, that the revocation of the 2023 TPS Designation, under which she had received TPS, violated the Equal Protection Clause of the U.S. Constitution and resulted in her unlawful detention.

For the reasons set forth below, the Petition is DENIED.

## BACKGROUND

Petitioner is a Venezuelan national. Am. Pet. ¶ 1. On September 10, 2022, Petitioner unlawfully entered the United States at or near El Paso, Texas, outside of a port of entry. Reaves Decl. ¶ 6; *see also* Second Return, Ex. C (Record of Deportable/Inadmissible Alien (Form I-213) dated December 4, 2025 (the "December RD/IA") at 2 [ECF No. 15-3]. She did not present or possess a valid entry document. Reaves Decl. ¶ 6. That same day, she was arrested by U.S. Border Patrol. *Id.* ¶ 7. A Form I-213 signed by Border Patrol Agent Benjamin Vega on September 11, 2022, indicates that Petitioner was charged as an alien present in the United States without permission or parole under 8 U.S.C. § 1182(a)(6)(A)(i) and was charged as removable under 8 U.S.C. § 1229a—the statute governing full, as opposed to expedited, removal proceedings. *See* Second Return, Ex. A (Record of Deportable/Inadmissible Alien (Form I-213) dated September 11, 2022 (the "September RD/IA")) [ECF No. 15-1]. On September 11, 2022, Petitioner was paroled into the United States pursuant to 8 U.S.C. § 1182(d)(5)(A) due to a lack of bed space. Reaves Decl. ¶ 8.

Thereafter, on August 26, 2023, Petitioner filed an application for immigration benefits and an application for work authorization. *Id.* ¶ 9. On March 11, 2024, Petitioner applied for TPS with United States Citizenship and Immigration Services ("USCIS"). *Id.* ¶ 10. With respect to TPS,

3

the Secretary for Homeland Security may designate a foreign country for TPS for a variety of reasons. *See* 8 U.S.C. § 1254a(b). Beneficiaries subject to a designation of TPS are not removable from the United States while the designation is in effect. 8 U.S.C. § 1254a(a)(1). Further, "[a]n alien provided temporary protected status under this section shall not be detained by the Attorney General on the basis of the alien's immigration status in the United States." 8 U.S.C. § 1254a(d)(4). However, a grant of TPS does not confer lawful permanent resident status on a noncitizen and is not treated as an admission—*i.e.*, a "lawful entry"—into the United States. *See Sanchez v. Mayorkas*, 593 U.S. 409, 413-14 (2021). DHS initially designated Venezuela for TPS in March 2021, which was twice extended. *See Nat'l TPS Alliance v. Noem*, 798 F. Supp. 3d 1108, 1123 (N.D. Cal. 2025). In October 2023, DHS redesignated Venezuela for TPS, which "allowed individuals to apply if they had continuously resided in the United States since July 31, 2023, and had continuously been physically present since October 3, 2023." *Id.* (citation omitted). Petitioner applied for TPS under the 2023 TPS Designation, Reaves Decl. ¶ 11, and her application was approved on March 30, 2024. *Id.* ¶ 10. Petitioner also applied for, and was granted, an employment authorization document based on her TPS approval. *Id.* Petitioner also claims she has filed an application for asylum. Am. Pet. ¶ 2.

On February 5, 2025, Secretary of Homeland Security Kristi Noem terminated the 2023 TPS Designation. 90 Fed. Reg. 9040, 9042 (Feb. 5, 2025); Reaves Decl. ¶ 11. The legality of that termination has been heavily litigated in federal court in California. A district court in the Northern District of California entered a partial final judgment and held, among other things, that the termination of the 2023 TPS Designation violated the Administrative Procedure Act ("APA") and thus set aside that agency action. *See Nat'l TPS Alliance*, 798 F. Supp. 3d at 1153, 1164. However,

4

on October 3, 2025, the Supreme Court granted the Government's stay of the district court's decision pending appeal and permitted the termination of the 2023 TPS Designation to take immediate effect. *See Noem v. Nat'l TPS Alliance*, 606 U.S. _, 146 S. Ct. 23 (Mem) (Oct. 3, 2025). The stay remains in effect pending disposition of the Government's appeal in the Ninth Circuit and disposition of a petition for a writ of certiorari if timely sought. *Id.* If a petition for writ of certiorari is denied, the stay will terminate automatically, but if certiorari is granted, the stay will terminate only after resolution by the Supreme Court. *Id.*[1] On January 28, 2026, the Ninth Circuit affirmed the district court's partial summary judgment order. *See Nat'l TPS All. v. Noem*, No. 25-5724, 2026 WL 226573, at *18 (9th Cir. Jan. 28, 2026).

Ultimately, Petitioner's TPS was terminated on November 21, 2025. Reaves Decl. ¶ 12; December RD/IA at 3.

On December 4, 2025, Petitioner reported to Immigration and Customs Enforcement ("ICE") for a check-in at 26 Federal Plaza, New York, New York. Reaves Decl. ¶ 13. At the check-in Petitioner was arrested apparently pursuant to 8 U.S.C. § 1225(b). *Id*. That same day she was served with a Notice To Appear charging her as inadmissible under 8 U.S.C. § 1182(a)(6)(A)(i) for being present in the United States without admission or parole. *Id.* ¶ 14; *see also* Second Return, Ex. D, Notice To Appear ("NTA") [ECF No. 15-4].

On the day she was taken into custody, Petitioner, through next friend Eduardo Fabian Arias, filed the original Petition. [ECF No. 1].[2] On December 5, 2025, Petitioner was transferred

---

[1] Recently, the same court in the Northern District of California granted declaratory judgment derivative of its earlier partial final judgment and held, among other things, that the "the termination of Venezuela's 2023 TPS designation on February 5, 2025" was unlawful and violated the Administrative Procedure Act ("APA"). *Nat'l TPS Alliance v. Noem*, No. 25-cv-01766, 2025 WL 3539156, at *3 (N.D. Cal. Dec. 10, 2025).

[2] In ordering Respondents to answer the Petition, the Court also ordered Mr. Arias to address in his Reply how he has standing to proceed as next of friend to Petitioner. [ECF No. 3]. Based on representations in Petitioner's Amended

to Elizabeth New Jersey and on December 7, 2025, she was transferred to Richwood Correctional Facility in Richwood, Louisiana. Reaves Decl. ¶ 15. The Government avers that Petitioner is currently detained pursuant to 8 U.S.C. § 1225(b)(2)(A). *Id.* ¶ 5. After the Government responded to the Petition, Petitioner filed an Amended Petition, through counsel, on December 19, 2025. [ECF No. 14].

In her Amended Petition, Petitioner, among other claims, brings a substantive due process claim for denial of medical treatment. Am. Pet. ¶¶ 95-97. She asserts that she suffers from multiple medical conditions, including diabetic kidney disease and that while in detention in Richwood Correctional Facility she has been denied medical treatment for her kidney disease. *Id.* ¶¶ 60, 71. According to the Declaration of Supervisory Detention and Deportation Officer Derrick D. McClung, which Petitioner does not contest, Petitioner was asked about her health status on the day she was arrested. McClung Decl. ¶ 6. She stated she was in poor health and responded that she had type 2 diabetes, high blood pressure (for which she took Atorberan), and that she had kidney stones. *Id.; see also* December RD/IA at 3.

Petitioner underwent another medical intake upon her arrival at the Richwood Correctional Center on December 7, 2025. McClung Decl. ¶ 7; *see also* Second Return, Ex. E ("Richwood Medical Records") at 1-2 [ECF No. 15-3]. Medical records from the visit, which the Government produced, show that Petitioner denied that she needed urgent medical attention and stated that she did not have a healthcare-related condition. Richwood Medical Records at 1; McClung Decl. ¶ 7. Petitioner did, however, arrive at Richwood Correctional Center with abnormal lab results based

---

Petition, filed through counsel, s*ee* Am. Pet., Ex. 1 ("Declaration of Kelly Jo Popkin") [ECF No. 14-1], and her Reply filed in support of the Amended Petition, *see* Reply at 1-3, the Court is satisfied that Mr. Arias had standing to proceed as next of friend with respect to the original Petition. Respondents do not argue otherwise.

on bloodwork done on November 6, 2025, which showed elevated levels of triglycerides, cholesterol, triglyceride to HDL ratio, hemoglobin A1C ratio (the average amount of glucose in blood over a three-month period), and microalbumin/creatine ratio (level of albumin protein in urine). *Id.* ¶ 7; Richwood Medical Records at 20-26, 30.

Referred for a further intake on December 8, 2025, Petitioner was documented as having impaired glucose tolerance, low back pain, and hyperlipidemia. McClung Decl. ¶ 8. Medical records from her intake on that date reflect that she denied having a chronic illness or diagnosis, denied having any problems needing immediate medical attention, and stated that she was not currently taking medications. *Id.*; Richwood Medical Records at 9-11, 17-18, 30. For her lower back pain, she was referred for an x-ray of her lumbar spine, which was conducted on December 10, 2025 and indicated she had a normal lumbar spine. McClung Decl. ¶ 9. Petitioner was also put on metformin for her abnormal A1C level. *Id.* ¶ 10. Medical records reflect that she did not appear for her nightly administration of metformin on December 11 and 12. *Id.*; Richwood Medical Records at 28-29.

On December 17, 2025, Petitioner was seen for a burning sensation during urination, yellow discharge, and flank plain that she rated as a 5 out of 10. Richwood Medical Records at 3. She was provided a prescription antibiotic and was instructed to return if the condition worsened or she saw no improvement. *Id.* at 4-5. The produced medical records in this case do not record any complaint from Petitioner concerning kidney disease. McClung Decl. ¶ 12. The Government asserts that Petitioner will be seen by medical staff in January of 2026 where she will be asked specifically about kidney problems. *Id.*

7

In ordering the Government to answer the Amended Petition, the Court also directed Petitioner "to submit to the Court a proposed Order directing the Warden or other supervising authority at the Richwood Correctional Center in Richwood, Louisiana, where Petitioner is currently being detained, that appropriate medical treatment be given." [ECF No. 12]. The Court stated it would "enter that [proposed] Order." [ECF No. 12]. To date Petitioner has not proposed such an order. In seeking an extension to file her Reply in support of her Amended Petition, which the Court granted [ECF No. 19], Petitioner stated an extension will enable her to present the Court with a complete record of the medical care she needs. [ECF No. 18]. As of this date, Petitioner has not come forward with any further evidence or records concerning her medical conditions or treatment thereof while in detention.

## ANALYSIS

### I.   Petitioner is Subject to Mandatory Detention

In Counts One and Two of her Amended Petition, Petitioner argues that her current detention violates the INA and applicable bond regulations—8 C.F.R. §§ 236.1, 1236.1, and 1003.19. Am. Pet. ¶¶ 79-88. Specifically, she argues that she is not subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), but is instead entitled to a bond hearing under 8 U.S.C. § 1226(a). As Petitioner recognizes, the Court has previously addressed this issue in *Chen v. Almodovar* ("*Chen-MKV*"), No. 1:25-CV-8350-MKV, 2025 WL 3484855 (S.D.N.Y. Dec. 4, 2025) and *Liang v. Almodovar*, No. 1:25-CV-09322-MKV, 2025 WL 3641512, at *3 (S.D.N.Y. Dec. 15, 2025).

Relevant here, Section 1225(b)(2)(A) provides that, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for

8

a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (cross-referencing the provision governing full, as opposed to expedited, "[r]emoval proceedings," 8 U.S.C. § 1229a). An "applicant for admission" is defined as "[a]n alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival and including an alien who is brought to the United States after having been interdicted in international or United States waters) shall be deemed for purposes of this chapter an applicant for admission." 8 U.S.C. § 1225(a)(1). Admission means "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

Here, Petitioner is plainly an applicant for admission as she is "present in the United States" without having "been admitted." 8 U.S.C. § 1225(a)(1). As the record shows, Petitioner unlawfully entered the country and has never been admitted. *See* September RD/IA at 2; December RD/IA at 2; *see also* NTA. Moreover, she was determined by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted." 8 U.S.C. § 1225(b)(2)(A); *see* NTA (charging Petitioner as an alien present without admission or parole in violation of 8 U.S.C. 1182(a)(6)(A)(i); *see also* September RD/IA at 2 (same); December RD/IA at 2 (same). As such, she is subject to mandatory detention under Section 1225(b)(2)(A).

It is of no moment that Petitioner had been granted parole pursuant to 8 U.S.C. § 1182(d)(5)(A) after she was detained upon her unlawful entry into the United States. *See* Reaves Decl. ¶ 8. Congress has made clear that such parole "shall not be regarded as an admission of the alien[.]" 8 U.S.C. § 1182(d)(5)(A). Moreover, a grant of TPS, similar to humanitarian parole, is not treated as an admission into the United States. *See Sanchez*, 593 U.S. at 413-14 ("The TPS program gives foreign nationals nonimmigrant status, but it does not admit them."). And while

9

Petitioner could not be detained while she had TPS, *see* 8 U.S.C. § 1254a(d)(4), it is undisputed that Petitioner's TPS had terminated on November 21, 2025, which is prior to her arrest and detention. *See* December RD/IA at 3.

Accordingly, Petitioner is properly subject to mandatory detention under Section 1225(b)(2)(A), which does not require bond hearings. *See Jennings v. Rodriguez*, 583 U.S. 281, 297 (2018).

In light of this determination, the Court also addresses Count Six of the Amended Petition, where Petitioner argues she is not subject to expedited removal and that any attempt to subject her to expedited removal would violate the INA and the Administrative Procedure Act ("APA"). Am. Pet. ¶¶ 103-07. According to the Reaves Declaration, when Petitioner was arrested on December 4, 2025, the Government appears to claim that she was arrested pursuant to Section 1225(b) as an alien subject to expedited removal. Reaves Decl. ¶ 14. However, given that Section 1225(b)(2)(A) governs here and the Government itself asserts Petitioner is detained pursuant to Section 1225(b)(2)(A), Reaves Decl. ¶ 5; Opp. at 1,5-6, Petitioner "shall be detained" pending a "full removal proceeding" under 8 U.S.C. § 1229a. *See Chen v. Almodovar ("Chen-JPC")*, No. 25 CIV. 9670 (JPC), 2026 WL 100761, at *13 (S.D.N.Y. Jan. 14, 2026).[3]

## II.    Procedural Due Process

In Count Three of her Amended Petition, Petitioner first contends her detention violates her due process rights because she was not provided an "individualized custody determination." Reply at 15-19; Am. Pet. ¶ 89-93. Petitioner's contention "present[s] nothing beyond the larger

---

[3] Respondents do not substantively address Petitioner's claim on this point. Rather, the Government asserts Petitioner's APA claim is unavailable as challenges to her detention must be brought in habeas. Opp. at 7-8 (citing *Trump v. J.G.G.*, 604 U.S. 670 (2025)). The Court declines to reach this issue.

10

contention as to the relevant and applicable statute to apply." *Chen-JPC*, 2026 WL 100761, at *14 (quoting *Cabanas v. Bondi*, No. 4:25-CV-04830, 2025 WL 3171331, at *7 (S.D. Tex. Nov. 13, 2025)). Thus, this claim necessarily fails as it simply rehashes under a different label her statutory claim. *Id.*; *see also Liang*, 2025 WL 3641512, at *5-6.

Petitioner also appears to challenge the process by which her parole was revoked arguing ICE failed to comply with its regulatory requirements. Am. Pet. ¶ 94. Petitioner contends parole revocation requires a case-by-case assessment where an official determines that the purposes of parole have been accomplished or that neither humanitarian reasons nor public benefit warrants the continued presence of the noncitizen. *Id.* (citation omitted). Both the Government and Petitioner fail to address how or precisely when Petitioner's parole was revoked. Petitioner merely states that her due process rights were violated when the Government "revoked her parole and subsequently arrested her." Am. Pet. ¶ 94. In any event, this claim fails.

In the case of an applicant for admission, "in ascertaining the process due to Petitioner in connection with his parole revocation, the Court must determine what process Congress has prescribed." *Lin v. Almodovar*, No. 1:25-cv-9639-MKV, 2025 WL 3706626, at *4 (S.D.N.Y. Dec. 22, 2025). The relevant statute, 8 U.S.C. § 1182(d)(5)(A), does not prescribe a process for revoking parole. However, as the Court articulated in *Lin*, the Court assumes, without deciding, the implementing regulations governing parole revocation apply. *Lin*, 2025 WL 3706626, at *4 (citing 8 C.F.R. § 212.5(e)(2)(i)).

Parole under Section 1182(d)(5)(A) is temporary. Parole may automatically terminate upon the noncitizen's "departure from the United States" or "at the expiration of the time for which parole was authorized[.]" 8 C.F.R. § 212.5(e)(1). Alternatively, parole may be revoked upon

11

written notice. 8 C.F.R. § 212(e)(2)(i). Critically, the implementing regulations specifically provide that when a "charging document," such as an NTA, is served on the noncitizen, "the charging document will constitute written notice of termination of parole, unless otherwise specified." 8 C.F.R. § 212.5(e)(2)(i); *see Campbell v. Almodovar*, No. 1:25-cv-09509 (JLR), 2025 WL 3538351, at *2 (S.D.N.Y. Dec. 10, 2025) (noting the term "charging document" includes an NTA); *see also* 8 C.F.R. § 244.1 (defining the term "[c]harging document" to include a "Notice to Appear"); 8 C.F.R. § 1003.13 (defining charging document that initiates proceeding before an immigrant judge to include a "Notice to Appear").

Thus, Petitioner's parole was effectively revoked on written notice when she was served with the NTA on the day she was arrested. *See* NTA. The NTA does not specify that it would not constitute written notice of termination of parole. *See* 8 C.F.R. § 212.5(e)(2)(i). Further, once parole is effectively revoked, Petitioner was "restored to the status that [] she had at the time of parole"—*i.e.*, an applicant for admission subject to mandatory detention. *Id.*

### III. *Bautista v. Almodovar* Class

Petitioner separately argues that she is entitled to a bond hearing because she is a member of the Bond Eligible Class certified by a district court in the Central District of California. Am. Pet. ¶¶ 108-15 (citing *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, _ F. Supp. 3d. _, 2025 WL 3288403, at *9 (C.D. Cal. Nov. 25, 2025)). In *Bautista*, the court certified a class of individuals who are entitled to bond hearings pursuant to 8 U.S.C. § 1226(a) and defined the class as follows:

> All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination.

*Bautista*, 2025 WL 3288403, at *9. In turn, on December 18, 2025, the *Bautista* court entered a partial final judgment in favor of members of the Bond Eligible Class and determined (1) that the Bond Eligible Class members are detained under 8 U.S.C. § 1226(a) and are not subject to mandatory detention under § 1225(b); (2) that pursuant to 8 C.F.R. §§ 236.1, 1236.1, and 1003.19, the Bond Eligible class members are entitled to consideration for release on bond; and (3) vacated nationwide DHS' policy (the "DHS Policy") requiring ICE employees to consider any noncitizens arrested in the United States and charged with being inadmissible as "applicant for admission" to be subject to mandatory detention under Section 1225(b)(2)(A).  *See generally Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, _ F. Supp. 3d _, 2025 WL 3713987 (C.D. Cal. Dec. 18, 2025*), judgment entered sub nom. Maldonado Bautista v. Noem*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3678485 (C.D. Cal. Dec. 18, 2025).  The Government has appealed that decision.

Petitioner's claim fails because her status is not the same as the Bond Eligible Class, which by definition requires that members "were not . . . apprehended upon arrival."  *Bautista*, 2025 WL 3288403, at *9.  Petitioner unlawfully entered the United States on September 10, 2022, and was thereafter immediately apprehended upon arrival.  *See* Reaves Decl. ¶¶ 6-7.  Moreover, as the *Bautista* court recognized, the reach of its ruling does not extend so far as to entitle habeas petitioners to relief.  The *Bautista* court properly recognized that jurisdiction over habeas claims lies only in the district of confinement.  As such, the *Bautista* order does not bind this Court with respect to Petitioner's request for habeas relief.  *Bautista*, 2025 WL 3713987, at *29-30 ("The court cannot order nationwide release or bond hearings for Bond Eligible class members, especially so to those confined outside this judicial district.").[4]

---

[4] The Court recognizes that the *Bautista* court "extend[ed] its declaratory judgment regarding the illegality of the DHS Policy" to all Bond Eligible class members across the country.  *Id.* at *29-30.  Nonetheless, even if she were a Bond

13

## IV. Substantive Due Process – Denial of Medical Care

Petitioner also brings a substantive due process claim, alleging that the Government has deprived her of "access to urgent medical care for a serious and ongoing medical condition" in violation of the Fifth Amendment. *See* Am. Pet. ¶ 97. Specifically, she claims she has been denied medical treatment for her kidney disease while detained at the Richwood Correctional Center. *Id.* ¶¶ 60, 71.

The due process clause prohibits the Government from being deliberately indifferent to the medical needs of civil detainees. *Charles v. Orange Cnty.*, 925 F.3d 73, 82, 85 (2d Cir. 2019). Thus, to prevail on this claim, Petitioner must show (1) that she had serious medical needs and (2) that the Government "acted with deliberate indifference to such needs." *Id.* at 86. "The serious medical needs standard contemplates a condition of urgency such as one that may produce death, degeneration, or extreme pain." *Id.* To show deliberate indifference, a detainee must prove "that the defendants *knew* that failing to provide the complained of medical treatment would pose a substantial risk to [the detainee's] health or that the defendants *should have known* that failing to provide the omitted medical treatment would pose a substantial risk to the detainee's health." *Id.* at 87 (alteration added) (emphasis in original).

The Government argues Petitioner's deliberate indifference claim fails because there is no evidence in the record that Petitioner suffers from diabetic kidney disease or other severe medical

---

Eligible Class member, Petitioner fails to explain how the nationwide declaratory relief issued by the *Bautista* court would require the Court to grant Petitioner habeas relief and order bond hearings, especially given the Court's independent conclusion that Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A) based on the plain reading of that statute. *See generally Chen-MKV*, 2025 WL 3484855. Indeed, in issuing nationwide declaratory relief *Bautista* made clear that vacatur of the DHS policy would not interfer[e] with the enforcement of contested statutes or ordinances" and that "[Section] 1225's operations are not affected, as it still retains the same force and effect of law as well as ability to operate without the DHS policy." *Bautista*, 2025 WL 3713987, at *18.

conditions. Opp. at 7. Further, the Government argues that even if she had such a condition, Petitioner has not come forward with any evidence that the Government was deliberately indifferent to that condition or to any severe medical condition she has. *Id.* The Government argues that instead the record shows that Petitioner's medical-related complaints have been handled promptly and appropriately. *Id.*

Petitioner does not rebut the Government's argument and fails to come forward with additional evidence beyond the allegations in her Amended Petition. Rather, Petitioner states that "she has been unable to receive counsel's legal mail at the facility, and therefore never received her authorization to release medical records." Reply at 1 n.1. Accordingly, Petitioner writes that she "reserves the right to raise a denial of medical care in the future once she has access to medical records." *Id.*

Based on the record, Petitioner cannot establish a substantive due process claim for denial of medical care. The uncontroverted medical record reflects that Petitioner has not raised a serious medical condition that the Government has treated with deliberate indifference. Indeed, the unrebutted record evidence establishes that Petitioner repeatedly disclaimed to Richwood Correctional Center staff that she had any chronic health condition or health issue requiring urgent medical attention. Richwood Medical Records at 1, 30 (medical records from December 7, 2025 intake reflecting that Petitioner denied need for urgent medical attention and stated she did not have a health-care related condition); *id.* at 9-11, 17-18, 30 (medical records from December 8, 2025 intake reflecting that Petitioner denied having a chronic illness or diagnosis, denied having problems needing immediate medical attention, and stated she was not currently taking medications); *see also* McClung Decl. ¶¶ 7-8. Indeed, the unrebutted medical records produced in

15

this case do not record any complaint from Petitioner concerning kidney disease. McClung Decl. ¶ 12. Further, according to the Declaration of Officer Derrick D. McClung, filed on December 23, 2025 [ECF No. 16], the Government has stated that Petitioner would be seen by medical staff in January 2026 where she will be asked specifically about kidney problems. McClung Decl. ¶ 12.

Moreover, the Court previously made clear in response to the Amended Petition, that to the extent Petitioner claimed she was not receiving appropriate and necessary medical treatment, Petitioner should submit a proposed Order and the Court would direct that appropriate treatment be provided. [ECF No. 12]. No order seeking medical treatment was ever submitted.

Accordingly, this claim is denied without prejudice to renewal in a separate habeas petition.

V.     **Termination of 2023 TPS Designation for Venezuela**

In Count Five of her Amended Petition, Petitioner challenges DHS's decision to terminate the 2023 TPS Designation for Venezuela arguing that it allegedly violated her Fifth Amendment right to equal protection. Am. Pet. ¶¶ 98-102. She asserts that her detention is the direct result of this allegedly unlawful decision. *Id.* Petitioner notes that a district court in the Northern District of California found that the vacatur of the 2023 TPS designation violated the APA, which has since been affirmed by the Ninth Circuit. Reply at 20-21; Supp. Auth. At 1.

Petitioner ignores the fact that neither the Ninth Circuit nor the district court in northern California has determined that termination by DHS of the 2023 TPS Designation for Venezuela violated the Equal Protection Clause. *See Nat'l TPS Alliance*, 798 F. Supp. 3d at 1164 (staying litigation over Equal Protection claim related to Venezuela TPS); *Nat'l TPS Alliance*, 2025 WL 3539156, at *1 ("The Court did not rule on Plaintiffs Equal Protection claims which remain pending."); *see also generally Nat'l TPS Alliance*, 2026 WL 226573. Thus, Petitioner's sole cited

legal authority on this point does not rule that the termination of the 2023 TPS Designation ran afoul of the Equal Protection Clause. And, in any event, a ruling by the Ninth Circuit or a California district court are not binding on this Court, especially given the Supreme Court's stay. *See Noem*, 146 S. Ct. at 24. Indeed, while the Supreme Court's stay order did not expressly decide the merits of the case, the stay order warrants caution and casts doubt on those decisions' persuasive value here. *See id.*

Moreover, the Court notes that in different circumstances, the Supreme Court has held that it is "squarely within the scope of Presidential authority under the INA" to suspend entry into the United States "on the basis of nationality." *Trump v. Hawaii*, 585 U.S. 667, 696, 697 (2018). And the Supreme Court has held that TPS does not constitute an admission into the United States. *See Sanchez*, 593 U.S. at 414. These holdings suggest that the more deferential rational basis standard of review would apply to Petitioner's constitutional claim here. *See Hawaii*, 585 U.S. at 705 (applying rational basis review to an Establishment Clause claim and noting that "it should come as no surprise that the Court hardly ever strikes down a policy as illegitimate under rational basis scrutiny."). In any event, Petitioner, who has the burden, has not offered any legal argument or authority in support of her conclusory assertion that termination of the 2023 TPS Designation by DHS violated the Equal Protection Clause beyond citing the non-binding decision from the Northern District of California and the Ninth Circuit's affirmance, which concerned the inapposite question of whether the termination violated the APA. Moreover, Petitioner has not provided a

sufficient factual record for the Court to render a decision on her constitutional claim.[5] Thus, this claim too is denied.[6]

## CONCLUSION

For the foregoing reasons, the Petition is DENIED.

The Clerk of Court is respectfully requested to close the case.

**SO ORDERED.**

Dated:  February 2, 2026
        New York, New York

*[signature: Mary Kay Vyskocil]*

**MARY KAY VYSKOCIL**
**United States District Judge**

---

[5] The Amended Petition merely purports to quote—out of any context—a handful of statements Secretary Noem reportedly has made concerning Venezuelans, and immigrants generally, and asserts that in connection with the termination of TPS, Secretary Noem has described Venezuelans as "dirtbags" and "criminals" and otherwise conflated Venezuela TPS holders with members of Tren de Aragua, a Venezuelan gang. Am. Pet. ¶¶ 72-78.

[6] In opposing this claim, the Government argues that Petitioner's claim repackages her habeas challenges as a claim under the APA, and that Petitioner cannot assert an APA claim to challenge the validity of her detention. Opp. at 7-8 (citing *J.G.G.*, 604 U.S. 672); *see also J.G.G.*, 604 U.S. at 674 (Kavanaugh, J., concurring) ("[G]iven 5 U.S.C. § 704, which states that claims under the APA are not available when there is another 'adequate remedy in a court,' I agree with the Court that habeas corpus, not the APA, is the proper vehicle here."). The Government fails to explain how Petitioner's Equal Protection claim is a repackaged APA claim. Nonetheless, given the Court denies this claim for independent reasons, the Court declines to reach this argument.